RECEIVED

SEP 2 3 1999

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

FILED

USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE __9, 27, 99__
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| BANCINSURE, INC. | * | CIVIL ACTION NO. 99-CV0456 |
| | * | |
| versus | * | JUDGE DOHERTY |
| | * | |
| AMERICAN SECURITY BANK | * | MAGISTRATE JUDGE METHVIN |
| | * | |
| | * | |

--------------------------------------------------------------------------------

## REPLY BRIEF IN SUPPORT OF
## MOTION TO DISMISS OR STAY

American Security Bank of Ville Platte, Inc. ("ASB") has moved the Court to exercise its discretion to dismiss or stay this declaratory judgment action. In opposition, BancInsure made three arguments which require a brief response from ASB: that its *lis pendens* exception in the state court action is still viable; that an anticipatory filing of a declaratory judgment action is not a valid basis for refusing to exercise jurisdiction over a declaratory judgment action; and that this action is not one for declaratory judgment but a contract claim.

**A.     The State Court Action Will Be Heard.**

BancInsure's declinatory exception of *lis pendens* was denied by the Thirteenth Judicial District Court on the same day that ASB's motion was filed. On or about September 8, 1999, BancInsure filed an application for supervisory writs to the Third Circuit Court of Appeals for the State of Louisiana for review of the judgment denying its exception. On or about September 16, 1999, the writ application was denied, as was a request for stay of proceedings. Unless BancInsure intends to file a writ application to the Louisiana Supreme Court, the question of whether the State Court intends to assert jurisdiction over ASB's claims is now closed.



**B.     Anticipatory Filing of Declaratory Judgment Actions Is Discouraged.**

BancInsure argues that its filing of an Anticipatory Declaratory Judgment Action is not a valid basis for the Court to decline to assert jurisdiction in this matter.   This argument is based primarily on Ninth Circuit jurisprudence.   However, as discussed in more detail in the Memorandum in Support, the Fifth Circuit in which the Court sits, and the United States Supreme Court, have unequivocally declared their position on this matter. *See* Wilton v. Seven Falls Co., 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942); Psarianos v. Standard Marine, Ltd., Inc., 12 F.3d 461, 463-4 (5th Cir. 1994); and Odeco Oil & Gas Co., Drilling Div. v. Bonnette, 4 F.3d 401, 404 (5th Cir. 1993).  Moreover, support for this position is found in widely recognized procedural treatises.  Anticipatory filings are generally disapproved as an abuse of the declaratory judgment process.[1]

**C.     This is a Declaratory Judgment Action.**

Finally, in opposition to ASB's Motion to Dismiss or Stay, BancInsure argues that the motion is not controlled by the Declaratory Judgment Act as it has asserted a claim for rescission

---

[1]        The Declaratory Judgment Act may not be used for procedural fencing, or as a tool for forum shopping.  For example, a declaratory relief plaintiff may not rush to file in federal court solely to evade the forum choice of the plaintiff in the coercive claim (the declaratory judgment defendant). . . .  If a court finds that a declaratory judgment action was brought in anticipation of the coercive suit for the purpose of gaining the home field advantage, the coercive suit is given precedence.

12 MOORE'S FEDERAL PRACTICE 3D, § 57-42[3] at 118-120 (1999).

        The courts properly decline relief if the declaratory judgment procedure, and the federal forum, is being used for "procedural fencing" or "in a race for res judicata."

10B Wright, Miller, & Kane, Federal Practice and Procedure: Civil 3d, § 2759, at p. 547-48 (1999).

of the Rider that it claims controls the coverage at issue in this matter.  ASB respectfully responds that this argument is incorrect as a matter of law and procedure and that the Court should reject the argument and dismiss or stay this matter in accordance with its discretion under the Declaratory Judgment Act.

1.  *The Claims Presented by BancInsure are in the Nature of Declaratory Judgment Claims.*

The Plaintiff has heretofore consistently described this action as one for declaratory judgment.  *See* BancInsure's Complaint at 1, attached hereto as Exhibit 1; and the Joint Status Report at 2, attached hereto as Exhibit 2.  Notwithstanding this fact, BancInsure now suggests that its action presents not merely a request for declaratory judgment, but also includes a substantive contract claim seeking rescission of the non-owned ATM Rider that allegedly provides the basis for its denial of coverage herein.  BancInsure further suggests that this claim prevents this matter being decided under the Declaratory Judgment Act and requires compliance, rather, with the Colorado River/Moses Cone "exceptional circumstances" abstention doctrine.[2]  This argument challenges the very nature of the claims asserted.

A declaratory judgment action is one which seeks to have a court adjudicate the rights and/or obligations of parties without any concomitant remedy.  For instance, Black's Law Dictionary (7th ed., 1999) defines a declaratory judgment as "[a] binding adjudication that establishes the rights and other legal relations of the parties without providing for or ordering enforcement."  Id. at 846.  This definition is consistent with the authority granted to both federal

_____

[2]    Colorado River Water Conservation Dist. v. U.S., 424 U.S. 800, 96 S. Ct. 1236 (1976) and Moses H. Cone Memorial Hospital v. Mercury Constr. Co., 460 U.S. 1, 103 S. Ct. 927 (1983).  See Wilton v. Seven Falls Co., 515 U.S. at 283-286, 115 S. Ct. at 2141-42 (discussion of Colorado River abstention doctrine).

and Louisiana courts to entertain actions which seek the determination of parties' rights in the absence of remedial action.

> [A]ny court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration. . . .

28 U.S.C. 2201(a).

> Courts of record within their respective jurisdictions may declare rights, status, and other legal relations whether or not further relief is or could be claimed . . . . A person interested under a . . . contract . . . or whose rights, status, or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder.

La. Code Civ. Proc. arts. 1871-72.

Moreover, treatises on federal procedure describe the purposes served by declaratory judgments.  The availability of declaratory relief serves the purpose of permitting an early adjudication of the rights and legal remedies involved in a dispute, regardless of whether claims for damages or injunctive relief have been raised or would otherwise need to be tried in the future.[3]  The traditional and conventional concept of the judicial process permitted the courts to act only when a coercive remedy, such as a judgment for damages or an injunction, was available; until a controversy had matured to a point at which such relief was appropriate and the person entitled thereto sought to invoke it, the courts were powerless to act.[4]

---

[3]     12 MOORE'S FEDERAL PRACTICE 3D ¶ 57.04[3], at 57-18.

[4]     10B Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D ¶ 2751, at 455.

The claims asserted by BancInsure in this action are clearly in the nature of a declaratory action.  The Complaint contains two counts and one prayer for relief.[5]  A brief review of both counts and the prayer reveals that BancInsure seeks nothing more nor less than to have the Court determine its rights and obligations under the Bond and Rider.  The first count seeks a declaration of the breadth of coverage and the second seeks a judgment rescinding the rider in its entirety.[6]  While the two counts posit separate theories on which the Court could base a finding that BancInsure does not have an obligation to indemnify ASB for the subject losses, there is no question but that the only action sought by BancInsure is a determination of its obligations, if any,

---

[5]     Count I.    Since ASB has not exercised its indemnification rights against ATM Captial [sic] under the Funding Agreement, nor taken action to determine the existence of any other policy of insurance covering the stolen rented cash, it has not yet suffered a loss covered by the Non-owned ATM Rider and any claim against BancInsure for loss under the Non-owned ATM Rider is premature.

Count II.    Alternatively, because BancInsure relied on the continuing existence of the Funding Agreement when it issued the Bond with the Non-owned ATM Rider, if ASB did not intend to require ATM Capital to maintain separate insurance following the issuance of the Bond with the Non-owned ATM Rider, and/or did not intend to enforce the indemnification provisions of the Funding Agreement following the issuance of the Bond with the Non-owned ATM Rider, the Non-owned ATM Rider is void.

WHEREFORE, plaintiff, BancInsure, prays for a declaration by this court that no loss has occurred under the Non-owned ATM Rider and any claim ASB has against BancInsure is premature because ASB has not exhausted its indemnification rights under the Funding Agreement against ATM Capital, nor has it taken action to determine the existence of any insurance covering the loss of the rented cash. Alternatively, BancInsure prays for judgment rescinding the Non-owned ATM Rider if the court determines that ASB did not intend to require ATM Capital to remain separate insurance following the issuance of the Bond with the Non-owned ATM Rider, and/or did not intend to enforce the indemnification provisions of the Funding Agreement following the issuance of the Bond with the Non-owned Rider . . . .

Complaint, at 5-6, attached hereto as Exhibit 1.

[6]     When an insurance policy is rescinded, it is rendered void *ab initio*, and is invalidated from its inception.  Royal Maccabees Life Ins. Co. v. Montgomery, 97-1434 (La.App. 1 Cir. 6/29/98), 716 So.2d 921, 925; W. McKenzie and H. Johnson, 15 *Louisiana Civil Law Treatise, Insurance Law and Practice*, § 223, at 479-80 (1996).

under the Bond.   As BancInsure seeks only a declaration from the Court, the only proper characterization of this matter is as a declaratory judgment action.

BancInsure's argument that its Count II is a contract claim is misleading.   It is undeniable that  the claim is one in contract: it seeks a declaration that the contract is void.   The first count similarly is a contract claim in that it seeks an interpretation of the scope of coverage afforded by the Bond.   It is not the type of law underlying the claim that determines whether the claim is or is not coercive in nature.   It is the remedy -- or action -- sought to be obtained from the court which determines whether it is a declaratory judgment claim.   At the time this action was initiated by BancInsure, ASB had incurred losses from ATMs and BancInsure had refused to indemnify ASB for those losses.   BancInsure had not incurred any loss, damage, or injury, nor has there been to date any allegation of loss, damage, or harm to BancInsure arising from the mistake or misunderstanding alleged.   BancInsure has not requested that the Court issue any coercive order or attempt to enforce any conclusion the Court might reach.   In the absence of any harm, loss, or damage, or any request for coercive relief, the only types of remedy available to BancInsure are equitable in nature, *i.e.* an injunction or a declaration.   As no injunctive relief has been requested, the only remaining alternative is a declaration of the rights of the parties, which is the only request BancInsure has made.   The request for declaratory relief brands this as a declaratory judgment action.

As noted above and in ASB's Memorandum in Support of Motion to Dismiss or Stay, both the Fifth Circuit Court of Appeals and the United States Supreme Court have repeatedly found that claims seeking to determine an insurer's obligations under a policy of insurance are typically asserted in declaratory judgment actions and courts properly refuse to entertain such

declaratory judgment actions when parallel state court proceedings are under way and will address the issues presented in the declaratory judgment action.

> 2.    *Rescission of the Rider at issue is Controlled by La. Rev. Stat. 22:619, the Prerequisites to Which BancInsure has not Alleged.*

Even were this Court to find that the claim for "judgment of rescission" was coercive rather than declaratory in nature, which is denied, the Court is nonetheless constrained to find that no claim for rescission has been stated by BancInsure in this matter.

Article 619 of Title 22 of the Louisiana Revised Statutes controls the rescission of insurance policies for mistake by an insurer, and establishes a significant burden for an insurer seeking to obtain rescission of a policy of insurance.  "[N]o oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or void the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive." La. Rev. Stat. 22:619(a).  The Complaint, attached hereto as Exhibit 1, does not contain any allegation that ASB either misrepresented any fact or issued any warranty to BancInsure with the intent to deceive the insurer regarding its plans.  Moreover, no fact is alleged from which such an inference may justifiably be made.

> 3.    *The Jurisprudence Cited by BancInsure is Neither Controlling nor Persuasive.*

In support of its argument, BancInsure cites the Court to one Fifth Circuit decision and several Ninth Circuit decisions.  In Home Insurance Co. v. Townsend, 22 F.3d 91 (5th Cir. 1994), the plaintiff insurer had issued a professional liability policy to a lawyer.  Upon discovering that the insurance application contained alleged misrepresentations, the insurer filed an action in diversity seeking rescission of the policy which had been issued to the lawyer.  On motion of the lawyer/defendant, the Court exercised its perceived discretion under the Declaratory Judgment

Act to refuse to entertain a declaratory judgment action.  On review, the Fifth Court found that the action was not controlled by the Declaratory Judgment Act, reversed the judgment and remanded the matter to the trial court for further proceedings.  Townsend is distinguishable from this case in three important respects.  First, unlike BancInsure in this matter, the insurer in Townsend very carefully avoided basing it action on the Declaratory Judgment Act and evoked federal diversity jurisdiction as the sole basis for its action.  Secondly, and of equal importance, the lawyer/defendant in Townsend refused to submit any brief in defense of the trial court's decision in his favor.  The opinion does not contain any analysis of whether it is the substantive law underlying the claim or the nature of the remedy sought by the Plaintiff which determines whether the claim is declaratory or coercive in nature.  Third, the Townsend plaintiff asserted only one claim seeking rescission of the contract.  By contrast in this matter, the first claim asserted by BancInsure is clearly one for declaratory relief and seeks interpretation of the scope of coverage afforded by the Bond.  The Court in Townsend neither purported nor attempted to address factual circumstances in which the plaintiff's primary claim is one for declaratory relief and the second is sought to be deemed a coercive claim.  The Fifth Circuit's opinion in Townsend does not mandate the conclusion that BancInsure's claims are not declaratory in nature.

## CONCLUSION

ASB respectfully requests that the court exercise its discretion to dismiss or stay this action in recognition of the fact that the issues presented herein are adequately addressed in a parallel state proceeding.  BancInsure has not presented any compelling reason to have this court enter the requested declarations rather than the Thirteenth Judicial District Court.

Respectfully submitted,

Patrick W. Gray (Bar #6265)
Carmen Rodriguez (Bar #22573)
LISKOW & LEWIS
822 Harding Street
P.O. Box 52008
Lafayette, Louisiana  70505-2008
Telephone (318) 232-7424

Attorneys for Defendant American Security
Bank of Ville Platte, Inc.

## Certificate of Service

I HEREBY CERTIFY that a copy of the above and foregoing pleading has been served

upon all counsel of record by placing same in the United States mail, properly addressed and

postage prepaid, this 23 day of September, 1999.

47643:RODRICA

MAR. 26 '99 (WED) 12:01   AMERI  ' SEC BANK                    1 318  13 1298            PAGE. 6

**RECEIVED**

MAR 1 6 1999

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT, LOUISIANA

U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

MAR 1 6 1999

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| BANCINSURE, INC. | * | CIVIL ACTION |
| | | **CV99-0456 L0** No. |
| VERSUS | * | SECTION "    " JUDGE DOHERTY |
| AMERICAN SECURITY BANK | * | MAGISTRATE JUDGE METHVIN MAG. DIV. |

*   *   *   *   *   *   *   *

## COMPLAINT FOR DECLARATORY JUDGMENT

This action is filed under the Federal Declaratory Judgment Act, 28 U.S.C. §
2201 and Rule 57 of the Federal Rules of Civil Procedure as it involves an actual controversy
of a justiciable nature between the parties, concerning the interpretation and application of
a financial institution bond, which controversy may be determined by a judgment of this
Court.

### PARTIES

1.

Plaintiff, BancInsure, Inc. (hereinafter "BancInsure"), is incorporated under the
laws of the State of Oklahoma and has its principal place of business in the State of
Oklahoma. At all times herein mentioned, plaintiff was duly qualified and licensed to do
business in the State of Louisiana.



EXHIBIT
" 1 "

MAR. 26 '99 (WED). 12:01    AMERI    I SEC BANK                    1 31/   59 1298        PAGE. 7

2.

Defendant, American Security Bank (hereinafter "ASB"), is a state bank chartered under the laws of the State of Louisiana and has its principal place of business in Ville Platte, Evangeline Parish, Louisiana.

<u>JURISDICTION</u>

3.

Jurisdiction is based on 28 U.S.C. § 1332. The matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different states.

<u>VENUE</u>

4.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) as the defendant, ASB, is domiciled in this District.

<u>FACTS</u>

5.

BancInsure issued Financial Institution Bond No. 17FIB00105-1 (hereinafter the "Bond") to ASB. The Bond was effective for the period February 5, 1998 to February 5, 2001.

6.

Rider BI-BD-NOATM(07/97) to the Bond provides non-owned automatic teller machine coverage to ASB (the "Non-owned ATM Rider"). The Non-owned ATM Rider provides that the coverage is excess to any other insurance policy covering rented cash located in the non-owned ATMs.

7.

Section 9 of the Conditions and Limitations of the Bond entitled "Other Insurance or Indemnity" provides that

> [c]overage afforded hereunder shall apply only as excess over any valid and collectible insurance or indemnity obtained by the Insured or by one other than the Insured on Property subject to exclusion (q) or by a Transportation Company, or by another entity on whose premises the loss occurred or which employed the person causing the loss or the messenger conveying the Property involved.

8.

On August 15, 1997, prior to the issuance of the Bond, ASB entered into a funding agreement with ATM Capital Corporation ("ATM Capital") pursuant to which ASB agreed to rent cash to ATM Capital (the "Funding Agreement").

9.

As a condition of the Funding Agreement, ATM Capital agreed at its cost to insure the rented cash against all risk of loss.

3

MAR. 26 '99 (WED) 12:02    AMERI  N SEC BANK                    1 31ᵖ `63 1298              PAGE. 9

10.

ATM Capital agreed that nothing would excuse it from its obligations to promptly replace or restore any lost, damaged, stolen or destroyed rented cash whether or not covered by insurance, whether the insurance was available, or whether the insurance proceeds were sufficient to replace or restore the rented cash.

11.

ATM Capital further agreed to indemnify, defend and hold harmless ASB against all losses resulting from ASB's funding of ATM Capital's ATM machines.

12.

On information and belief, on November 6, 1998, $112,440.00 was stolen from an ATM Capital automatic teller machine at the Metro Point Center, 949 South Coast Drive, Costa Mesa, California.

13.

A Property Loss Notice dated November 12, 1998 was faxed to BancInsure on that date advising it of the loss.

14.

The Bond provides excess insurance over the indemnity obligation owed by ATM Capital to ASB, as well as excess insurance over any other insurance insuring the loss of the rented cash.

15.

ASB has refused to make demand on ATM Capital under the indemnity provisions of the Funding Agreement to replace the stolen rented cash; and, on information and belief, ASB has taken no action to determine the existence of any other policy of insurance covering the loss of the rented cash.

16.

BancInsure relied on the continuing existence of the indemnity contained in the Funding Agreement as well as the agreement by ATM Capital to maintain insurance on the rented cash when it issued the Bond with the Non-owned ATM Rider.

17.

## COUNT I

BancInsure repeats and realleges the allegations set forth in paragraphs 1. through 16. above.

18.

Since ASB has not exercised its indemnification rights against ATM Captial under the Funding Agreement, nor taken action to determine the existence of any other policy of insurance covering the stolen rented cash, it has not yet suffered a loss covered by the Non-owned ATM Rider and any claim against BancInsure for loss under the Non-owned ATM Rider is premature.

## COUNT II

### 19.

BancInsure repeats and realleges the allegations set forth in paragraphs 1. through 16. above.

### 20.

Alternatively, because BancInsure relied on the continuing existence of the Funding Agreement when it issued the Bond with the Non-owned ATM Rider, if ASB did not intend to require ATM Capital to maintain separate insurance following the issuance of the Bond with the Non-owned ATM Rider, and/or did not intend to enforce the indemnification provisions of the Funding Agreement following the issuance of the Bond with the Non-owned ATM Rider, the Non-owned ATM Rider is void.

WHEREFORE, plaintiff, BancInsure, prays for a declaration by this court that no loss has occurred under the Non-owned ATM Rider and any claim ASB has against BancInsure is premature because ASB has not exhausted its indemnification rights under the Funding Agreement against ATM Capital, nor has it taken action to determine the existence of any insurance covering the loss of the rented cash. Alternatively, BancInsure prays for judgment rescinding the Non-owned ATM Rider if the court determines that ASB did not intend to require ATM Capital to maintain separate insurance following the issuance of the Bond with the Non-owned ATM Rider, and/or did not intend to enforce the indemnification provisions of the Funding Agreement following the issuance of the Bond with the Non-

owned ATM Rider; and for such other and further relief the Court may deem just and equitable in the circumstances.

PREAUS, RODDY & KREBS

DAVID J. KREBS (1466)
MAURA Z. PELLETERI (8463)
650 Poydras Street, Suite 1650
New Orleans, LA 70130
Telephone: (504) 523-2111

ATTORNEYS FOR BANCINSURE, INC.

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| BANCINSURE, INC. | * | CIVIL ACTION |
| | * | NO. 99-CV0456 |
| VERSUS | | |
| | * | JUDGE DOHERTY |
| AMERICAN SECURITY BANK | | |
| | * | MAGISTRATE JUDGE METHVIN |

\*     \*     \*     \*     \*     \*     \*

## JOINT STATUS REPORT

A joint meeting of counsel was held on Monday, August 23, 1999 in person and on Tuesday, August 24, 1999 by telephone. The following counsel and/or unrepresented parties participated:

| NAME | PARTY REPRESENTED |
|---|---|
| Maura Z. Pelleteri | BancInsure, Inc. |
| Carmen M. Rodriguez | American Security Bank |

EXHIBIT

"2"

Failure to fully complete in good faith and sign the Joint Status report and submit it to the Magistrate Judge's office within the deadline will invite imposition of the sanctions authorized by Fed. R.Civ.P. 16(f).

1. The parties have exchanged the required witness and document lists as ordered by the Scheduling Order.

2. A conference with the Magistrate Judge is not requested at this time.

THE PARTIES DISCUSSED THE FOLLOWING SUBJECTS AND AGREED TO THE MATTERS HEREINAFTER SET FORTH:

3. Jurisdiction in this case arises under 28 U.S.C. 1332 as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs and is between citizens of different states. BancInsure, Inc.'s suit is for declaratory judgment under 28 U.S.C. 2201 and Rule 57 of the Federal Rules of Civil Procedure. American Security Bank's counterclaim seeks both damages pursuant to 28 U.S.C. 1332 and for declaratory relief under 28 U.S.C. 2201 and Rule 57 of the Federal Rules of Civil Procedure.

4. Plaintiff, BancInsure, Inc. ("BancInsure") contends that it issued Financial Institution Bond No. 17FIB00105-1 (hereinafter the "Bond") to defendant, American Security Bank ("ASB") effective February 5, 1998. A Rider to the Bond, BI-BD-NOATM(07/97) provided non-owned automatic teller machine coverage to ASB (the "Non-owned ATM Rider"). That Non-owned ATM Rider provides that the coverage is excess to any other insurance policy covering rented cash located in the non-owned ATMS. Section 9 of the Conditions and Limitations of the Bond provided that the Bond's coverage shall

- 2 -

apply only as excess over any valid and collectible insurance or indemnity obtained by the ASB or by one other than ASB on Property subject to exclusion (q) or by a Transportation Company, or by another entity on whose premises the loss occurred or which employed the person causing the loss or the messenger conveying the Property involved.

On August 15, 1997, prior to the issuance of the Bond, ASB entered into a funding agreement with ATM Capital Corporation ("ATM Capital") pursuant to which ASB agreed to rent cash to ATM Capital (the "Funding Agreement"). As a condition of the Funding Agreement, ATM Capital agreed to insure the rented cash against all risk of loss and further agreed that nothing would excuse it from its obligations to promptly replace or restore any lost, damaged, stolen or destroyed rented cash whether or not covered by insurance, whether the insurance was available, or whether the insurance proceeds were sufficient to replace or restore the rented cash. In addition, ATM Capital agreed to indemnify, defend and hold harmless ASB against all losses resulting from ASB's funding of ATM Capital's ATM machines. BancInsure relied on the continuing existence of the indemnity contained in the Funding Agreement as well as the agreement by ATM Capital to maintain insurance on the rented cash when it issued the Bond with the Non-owned ATM Rider.

On November 12, 1998 a Property Loss Notice was telecopied to BancInsure by ASB's agent, advising that $112,440.00 was stolen from an ATM Capital automatic teller machine at the Metro Point Center, 949 South Coast Drive, Costa Mesa, California.

ASB refused to make demand on ATM Capital under the indemnity provisions of the Funding Agreement to replace the stolen rented cash; and, on information and belief, ASB

- 3 -

has taken no action to determine the existence of any other policy of insurance covering the loss of the rented cash.

BancInsure instituted this action seeking a declaration that no loss has occurred under the Non-Owned ATM Rider of the Bond and that any claim the Bank has against BancInsure is premature because the Bank failed to exhaust its indemnification rights under the Funding Agreement it entered into with ATM Capital in connection with its electronic banking division rented cash program.  Alternatively, BancInsure has asked for a rescission of the Non-Owned ATM Rider if the Court determines that  ASB never intended to require ATM Capital to maintain separate insurance and/or did not intend to enforce the indemnification provisions contained in the Funding Agreement once the Bond with the Non-Owned ATM Rider was issued.

ASB answered BancInsure's complaint and filed a counterclaim which seeks a declaration that the Bond provides coverage for the loss involving ATM Capital and for certain losses involving other ATM operators and owners with whom ASB contracted. Alternatively, ASB seeks a declaration that the Bond be reformed to provide coverage for those losses set forth in the counterclaim.  BancInsure contends that because ASB has not exercised its indemnification rights against any ATM owner and/or operator, nor taken action to determine the existence of any other policy of insurance covering any alleged "loss," it has not yet suffered a loss covered by the Bond and such claims are premature.  BancInsure has further denied ASB's entitlement to tort damages for misrepresentation, penalties and attorneys' fees.

- 4 -

Defendant contends that the Plaintiff, BancInsure, Inc., issued a policy of insurance which provides coverage for losses from non-owned automatic teller machines (ATMs). Defendant incurred losses in excess of $400,000 in losses during 1998 and submitted proofs of those losses. Plaintiff has denied coverage for the losses incurred. By doing so, the Plaintiff has breached its contractual obligation under the insurance policy. In the alternative, Defendant seeks reformation of the insurance agreement or, in the alternative, damages for failure to issue coverage as promised.

6. Identify planned amendments to pleadings/planned motions:

     A. Motion for Summary Judgment (BancInsure, Inc.)

     B. Motion to Dismiss counterclaim (BancInsure, Inc.)

     C. Motion to Compel Complete Discovery Responses (BancInsure, Inc.)

     D. Motion to Dismiss or Alternative, for stay of Proceedings (American Security Bank)

     E. Motion for Summary Judgment (American Security Bank)

     F. Motion to Compel Full and Complete Responses to All Discovery (American Security Bank)

     G. Amendment of Counterclaim to seek recovery costs of proving admissions denied without basis (American Security Bank)

     H. Motion to Substitute Hancock Bank of Louisiana for American Security Bank ( American Security Bank)

7.   Parties agree to stipulate to authenticity of all documents except those noted below:

Inasmuch as discovery is in the initial stage, the parties have not come to an agreement with respect to the authenticity of documents.  The parties have no knowledge at this time of any dispute as to the authenticity of any document.

8.   Each party shall identify anticipated expert witnesses by field of expertise and name.

No experts have been retained by either side at this time.  The parties reserve the right to retain experts for consulting and/or trial purposes and will identify trial experts in accordance with the Scheduling Order.

9.   This case will not require a specialized discovery plan.  Discovery is ongoing in this case.  BancInsure has propounded discovery requests to ASB and certain responses have been provided.  BancInsure and ASB have had a discovery conference with respect to those responses and it is anticipated that additional responses will be provided or BancInsure will request court intervention with respect to that discovery.   In addition, numerous depositions are currently scheduled in this matter.

10.  **ALTERNATIVE DISPUTE RESOLUTION (ADR)**

A. Counsel CERTIFY that their clients were given notice of the joint meeting and counsel obtained their clients' desires as to alternative dispute resolution.  Counsel further CERTIFY that at the joint meeting they discussed in good faith the feasibility of using alternative methods of dispute resolution, including mediation, arbitration, summary

jury or bench trial, and/or a settlement conference with a Judge or Magistrate Judge.  The parties agreed that the following ADR method will be pursued at the listed stage of litigation: TYPE OF ADR:   Informal settlement discussions are being held with respect to this matter. The parties intend to engage in these discussions in conjunction with certain discovery matters and attempt to resolve this dispute.  Failing informal discussions among counsel, the parties are amenable to mediation with a third party mediator.   Failing mediation, the parties would also be agreeable to a settlement conference with the Magistrate Judge.

B.   Although the parties agree that a settlement conference with a judicial officer could be productive, no dates have been selected as the parties wish to explore settlement outside a structured process at this time.  The parties are aware that the court normally requires at least four weeks advance notice in order to schedule a settlement conference and will calculate that time period into any request made to the court for a settlement conference.

C.  The parties believe that ADR as outlined above would be beneficial.

D. The parties are not divided on the issue of ADR.

11. The following facts and legal issues are not in dispute:

A.  BancInsure is incorporated under the laws of the State of Oklahoma and has its principal place of business in the State of Oklahoma

B.   BancInsure was and is duly qualified and licensed to do business in the State of Louisiana.

C.  At all material times pertinent to this litigation, ASB was a state bank chartered under the laws of the State of Louisiana with its principal place of business in Ville Platte, Evangeline Parish, Louisiana.

D.  BancInsure issued Financial Institution Bond No. 17FIB00105-1 to ASB (hereinafter the "Bond").

E.  The Bond had an effective date of February 5, 1998.

F.  The Bond was canceled effective February 15, 1999.

G.  On August 15, 1997, ASB entered into a funding agreement with ATM Capital Corporation pursuant to which ASB agreed to rent cash to ATM Capital Corporation (the "Funding Agreement").

12.  The major issues of fact and law in dispute are as follows:

A.  The Non-Owned ATM Rider to the Bond provides that the coverage is excess to any other insurance policy covering rented cash located in the non-owned ATMs.

B.  As a condition of the Funding Agreement between ATM Capital and ASB, ATM Capital agreed at its cost to insure the rented cash against all risk of loss.

C.  ATM Capital agreed in the Funding Agreement that nothing would excuse it from its obligation to promptly replace or restore any lost, damaged, stolen or destroyed rented cash whether or not covered by insurance, whether the insurance was available, or whether the insurance proceeds were sufficient to replace or restore the rented cash.

D.  ATM Capital further agreed to indemnify, defend and hold harmless ASB against all losses resulting from ASB's funding of ATM Capital's ATM machine.

- 8 -

E.  On November 12, 1998, a Property Loss Notice was faxed to BancInsure from ASB's agent advising that on November 6, 1998, $112,440.00 was stolen from an ATM Capital automatic teller machine at the Metro Point Center, 949 South Coast Drive, Costa Mesa, California.

F.  The Bond provides excess insurance over the indemnity obligation owed by ATM Capital to ASB, as well as excess insurance over any other insurance insuring the loss of the rented cash.

G.  ASB refused to make demand on ATM Capital under the indemnity provisions of the Funding Agreement to replace the stolen rented cash.

H.  BancInsure relied on the continuing existence of the indemnity contained in the Funding Agreement as well as the agreement by ATM Capital to maintain insurance on the rented cash when it issued the Bond with the Non-owed ATM Rider.

I.  Because ASB has not exercised its indemnification rights against ATM Capital under the Funding Agreement nor taken action to determine the existence of any other policy of insurance covering the stolen rented cash, it has not yet suffered a loss covered by the Non-owned ATM Rider and any claim against BancInsure for loss und er the Non-owned ATM Rider is premature.

J.  In the alternative, because BancInsure relied upon the continuing existence of the Funding Agreement when it issued the Bond with the Non-owned ATM Rider, if ASB did not intend to require ATM Capital and or other ATM operators and owned with whom it contracted to maintain separate insurance following the issuance of the Bond with the Non-

owned ATM Rider, and/or did not intend to enforce the indemnification provisions of the Funding Agreement following the issuance of the Bond with the Non-owned ATM Rider, the Non-owned ATM Rider is void.

K.  Rider BI-BD-NOATM(07/97) to the Bond provided non-owned automatic teller machine coverage to ASB (the "Non-owned ATM Rider").

L.  Whether BancInsure agreed to provide primary coverage for losses of rented cash which American Security Bank might incur.

M.  Whether BancInsure issued the coverage requested by American Security Bank and agreed upon by BancInsure during negotiations.

N.  Whether BancInsure violated its obligation to issue the coverage requested, negotiated and agreed upon between itself and representatives of American Security Bank.

O.  Whether BancInsure misled or negligently misrepresented to American Security Bank, through its representatives, the scope of insurance coverage provided under the bond.

P.  Whether BancInsure has denied, in bad faith, claims in excess of $400,000 for losses of rented cash incurred by American Security Bank.

Q.  Whether, if there is no coverage under the policy at issue, American Security Bank is entitled to reformation of the contract to include the requested coverage.

R.  Whether American Security Bank is entitled to recover damages, penalties, and attorneys fees, from BancInsure for its actions in connection with the issuance of the bond and the denial of coverage for the losses incurred.

13.  This will be a bench trial.

14.  Estimated time of trial is three (3) court days.

15.  Counsel are advised of their right to consent to trial by Magistrate Judge pursuant to 28 U.S.C. §636(c).  All counsel and/or unrepresented parties must sign the attached consent form to establish consent jurisdiction.

16.  **TRACK ASSIGNMENT**: Counsel are advised that this case is assigned to the general track, are fully advised of the right to request a transfer to the accelerated or standby docket, and finally, are advised that the forms which must be signed by all counsel to request a change in docket status are available from the Clerk of Court at Lafayette, Louisiana.

17.  There are no additional matters at this time.

### CERTIFICATION BY COUNSEL/UNREPRESENTED PARTIES

I certify that the foregoing is accurate and complete.

**Printed Name**               **Signature**

MAURA Z. PELLETERI

CARMEN M. RODRIGUEZ

**FILED**

USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE 8/31/99
BY *Cgl*

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| BANCINSURE, INC. | * | CIVIL ACTION |
| | * | NO. 99-CV0456 |
| VERSUS | | |
| | * | JUDGE DOHERTY |
| AMERICAN SECURITY BANK | | |
| | * | MAGISTRATE JUDGE METHVIN |

\*   \*   \*   \*   \*   \*   \*

## O R D E R

Having reviewed the foregoing Joint Status Report and determined it to be complete,

IT IS ORDERED that the Clerk of Court file it in the record.

Signed this 31st day of August, 1999, at Lafayette, Louisiana.

_____
MAGISTRATE JUDGE

MILDRED E. METHVIN
United States Magistrate Judge

COPY SENT
DATE 8-31-99
BY *Cgl*
TO *Brelis*
*Stay*
*MEM*

**RECEIVED**
SEP 01 1999
SKOW & LEWIS

- 12 -